UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS SHADDEN, JR., | ) Case No.: 1:12-cv-01455 GSA HC |
| Petitioner, | ) ORDER DENYING PETITION FOR WRIT OF <br> ) HABEAS CORPUS |
| v. | ) ORDER DIRECTING CLERK OF COURT TO |
| DERRAL G. ADAMS, Warden, | ) ENTER JUDGMENT |
| Respondent. | ) ORDER DECLINING ISSUANCE OF <br> ) CERTIFICATE OF APPEALABILITY |

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He is represented in this action by Gregory H. Mitts, Esq. The parties have consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. § 636(c).

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a judgment of the Superior Court of California, County of Kern, following his conviction by jury trial in 2005 of attempting to dissuade a witness from testifying in a trial. Pursuant to California's Three Strikes law, he was sentenced to a term of thirty-five years to life to be served consecutive to the sixteen year sentence imposed in a prior case.

Petitioner timely filed a notice of appeal. On September 20, 2007, the California Court of Appeal, Fifth Appellate District ("Fifth DCA"), affirmed the judgment. Petitioner filed a petition for review in the California Supreme Court. The petition was summarily denied on January 16, 2008.

On September 15, 2008, Petitioner filed a petition for writ of habeas corpus in the Kern County Superior Court. The petition was denied on December 1, 2008, in a reasoned decision. He then filed a habeas petition in the Fifth DCA on January 8, 2009. On January 15, 2009, the petition was summarily denied. Petitioner filed a habeas petition in the California Supreme Court on March 6, 2009. On August 12, 2009, the petition was denied.

On April 10, 2012, Petitioner filed an application to file a second or successive petition in the Ninth Circuit Court of Appeals. The Ninth Circuit determined that Petitioner had not yet obtained federal review of the conviction for attempting to dissuade a witness and therefore transferred the petition to this Court on September 5, 2012. Following a preliminary review of the petition, the Court determined that the application that was construed as a petition and transferred to this Court was deficient and dismissed the petition with leave to file an amended petition. On March 26, 2013, Petitioner filed a first amended petition. The amended petition presents the following two claims for relief: (1) Petitioner argues that pursuant to Kellett v. Superior Court, 63 Cal.2d 822 (1966), the prosecution's failure to join the attempted dissuasion of a witness case with the prior shooting case violated Petitioner's rights to fundamental fairness under the due process clause of the Fourteenth Amendment; and (2) Petitioner claims he was denied effective assistance of counsel because defense counsel failed to have the dissuasion case barred or consolidated. On May 28, 2013, Respondent filed an answer to the petition. On August 20, 2013, Petitioner filed a traverse.

## STATEMENT OF FACTS[1]

In a previous appeal, No. F048765, we affirmed the 2004 conviction of defendant Thomas Joe Shadden of felony offenses arising from his firing of several shots at an unoccupied car belonging to the mother of his children, which was parked in the carport of her apartment complex. In this case, he stands convicted of committing a felony violation of Penal Code section 136.1, subdivision (a)(2), by attempting to prevent or dissuade a witness to the shooting from testifying at his trial in the prior case. Having been convicted in 1997 of felony offenses arising from his burning of another woman's car, defendant received an enhanced three-strikes sentence of 35 years to life, to be served consecutively to the 16-year term he received for the car shooting.

….

---

[1] The Fifth DCA's summary of the facts in its September 20, 2007, opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Petitioner does not present clear and convincing evidence to the contrary; thus, the Court adopts the factual recitations set forth by the Fifth DCA.

The facts of the underlying shooting offenses are detailed in our partially published opinion in the prior appeal, of which we take judicial notice. As we stated there, defendant was angry at Vanessa Ortiz, the mother of his children. He drove to her apartment, found her car in the carport, and fired several shots at it. Vanessa's brother, Jason Ortiz, was standing nearby, as was a friend of Jason's named Ruben. Defendant was convicted of discharging a firearm in a grossly negligent manner, discharging a firearm at an unoccupied motor vehicle, and being a felon in possession of a firearm. After exercising its discretion to dismiss a prior-offense allegation in order to avoid imposing a third-strike sentence, the court imposed an aggregate prison term of 16 years. (*People v. Shadden* (2007) 150 Cal.App.4th 137, 139, 140-141, 142, review granted Aug. 8, 2007, S153233, review dism. and cause remanded Sept. 12, 2007 (*Shadden I*).)

Among the evidence presented to the jury in that case were tapes of seven telephone calls defendant made from jail while awaiting trial. Speaking to Vanessa and other family members, defendant "made many incriminating statements" during these conversations. (*Shadden I, supra*, 150 Cal.App.4th at p. 142.) These statements included comments about the potential trial testimony of various witnesses. As we stated in the unpublished portion of our previous opinion, "[t]he phone calls constitute very extensive evidence of a plan on defendant's part to suppress evidence and manipulate witnesses in order to conceal the guilt to which he admitted."

Based on part of the phone-call evidence, the district attorney filed the information in this case. The information charged in count one that defendant violated section 136.1, subdivision (a)(2), by attempting to prevent or dissuade Vanessa and Jason from attending or giving testimony at trial. It charged in count two that defendant violated the same subdivision by attempting to prevent or dissuade from attending or testifying at trial a "witness referred to as 'other dude'" in one of the phone conversations. As we mentioned in our previous opinion, this witness was Jason's friend, Ruben. The information further charged that defendant had been convicted of two serious prior felonies within the meaning of sections 667, subdivisions (a)-(e), and 1170.12, and had served a prior prison term within the meaning of section 667.5, subdivision (b). The prior felonies were violations of sections 422 (making a criminal threat) and 451, subdivision (d) (arson).

The trial court granted defendant's motion for acquittal on count two. The court declared a mistrial on count one when the jury was unable to reach a verdict.

Defendant was retried on count one. Before the second trial, the information was amended to delete Vanessa's name from count one.

At trial, the prosecution played a tape of a telephone call defendant made to Vanessa from jail on November 10, 2004. One topic defendant and Vanessa discussed was a plan by which Vanessa and Jason were to contact the police and retract their statements incriminating defendant:

"[DEFENDANT]: Did you call ev-have you even called yet?

"VANESSA: We're going to get the police report tomorrow and-

"[DEFENDANT]: Why? I told you what you got to do the fuckin' first day.

"VANESSA: Oh, I'm, I'm gonna do it and I even ... told Jason already too.

"[DEFENDANT]: Why didn't you just call already and say, and we would've

avoided all of this. The second day you could of called and said it.

"VANESSA: Cause I needed to speak to Jason first to make sure that he was going to go with it and he said yeah too.

"[DEFENDANT]: You talked to him already?

"VANESSA: Yeah he said-

"[DEFENDANT]: Why haven't you called then? All you have to do is call.

"VANESSA: I tried, I tried to (inaudible) I talked to him yesterday Tommy. He told me right off the bat 'I'm not testifying.'

"[DEFENDANT]: Why don't you just fuckin' call and say what I told you?

"VANESSA: I, I, I will. I'll call tomorrow morning if you want me to.

"[DEFENDANT]: You fuckin' should of did it the next morning when I told you.

"VANESSA: I told you I had to wait till I get a hold of Jason and I got a hold of him yesterday."

Later in the call, defendant told Vanessa the new story she was to give the police:

"[DEFENDANT]: You need to fuckin call. I don't give a fuck if you call right now. First thing in the fuckin morning.

"VANESSA: Okay.

"[DEFENDANT]: You call em and tell them what you did.

"VANESSA: Okay.

"[DEFENDANT]: What did you do? You got mad cause you heard I was there and I broke that fuckin baby thing ...

"VANESSA: Uh-huh.

"[DEFENDANT]: ... and you fuckin went out and you fucking had your fuckin friend do it. What friend? Who cares? I'm letting you know what happened.

"VANESSA: Okay.

"[DEFENDANT]: They don't want to believe you, who cares? Tell em.

"VANESSA: Okay."

The conversation then turned to the subject of the possible testimony of Jason and Ruben:

"[DEFENDANT]: What you need to do is, make uh, Jason's homeboy ... Jason.

4

"VANESSA: Uh-huh ...

"[DEFENDANT]: What did he say? He's going to testify?

"VANESSA: He says he's not.

"[DEFENDANT]: Well then they-they better be somewhere they can't be found.

"VANESSA: That's what I said.

"[DEFENDANT]: All right tell him. What about his homeboy?

"VANESSA: Well he, yeah he-that's-when I talked to him yesterday he said I didn't even, I didn't even know it was your husband.

"[DEFENDANT]: Did he say it was me?

"VANESSA: Nope."

Defendant repeated his instructions for Vanessa's story a few minutes later: "Tell 'em you were fuckin' mad cause I was there half hour previous and you heard I smashed the fucking thing like I did, you know, I was going to fuckin lie, I broke the baby's (inaudible) fuck it. Dang, you fuckin had your friend shoot it up hey."

Vanessa testified that she never tried to prevent Jason from testifying. She wanted to avoid giving her own testimony, however, and was arrested for failing to appear at the preliminary hearing. Jason testified that he tried to avoid the subpoena for his testimony at the shooting trial, but did so because he was a drug user and wanted to avoid contact with law enforcement. He said no one asked him not to testify. Both Vanessa and Jason testified at the shooting trial.

The jury found defendant guilty of the charge with respect to Jason. The trial court found the prior conviction and prison-term allegations true. It denied defendant's request to strike prior strikes and imposed a sentence of 25 years to life (§§ 667, subd. (e)(2)(A)(ii); 1170.12, subd. (c)(2)(A)(ii)), plus 10 years (§ 667, subd. (a)). This sentence was to run consecutively to the 16-year sentence for the shooting.

(Respondent's Exhibit A, at 1-3 (footnotes omitted).)

## DISCUSSION

I. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of Kern County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

1  On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.  Exhaustion of State Remedies

A state prisoner seeking a writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations. Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509, 518 (1982); Buffalo v. Sunn, 854 F.2d 1158, 1163 (9th Cir. 1988).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 276 (1971); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996). A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis. Duncan, 513 U.S. at 365 (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis).

Additionally, the petitioner must have specifically told the state court that he was raising a federal constitutional claim. Duncan, 513 U.S. at 365-66; Lyons v. Crawford, 232 F.3d 666, 669 (9th Cir.2000), *amended*, 247 F.3d 904 (2001); Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir.1999); Keating v. Hood, 133 F.3d 1240, 1241 (9th Cir.1998). In Duncan, the United States Supreme Court reiterated the rule as follows:

> In Picard v. Connor, 404 U.S. 270, 275 . . . (1971), we said that exhaustion of state remedies requires that petitioners "fairly presen[t]" federal claims to the state courts in order to give the State the "'opportunity to pass upon and correct alleged violations of the prisoners' federal rights" (some internal quotation marks omitted). If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only

6

1  in federal court, but in state court.

2  Duncan, 513 U.S. at 365-366.  The Ninth Circuit examined the rule further, stating:

> Our rule is that a state prisoner has not "fairly presented" (and thus exhausted) his federal claims in state court unless he specifically indicated to that court that those claims were based on federal law. See Shumway v. Payne, 223 F.3d 982, 987-88 (9th Cir. 2000). Since the Supreme Court's decision in Duncan, this court has held that the petitioner must make the federal basis of the claim explicit either by citing federal law or the decisions of federal courts, even if the federal basis is "self-evident," Gatlin v. Madding, 189 F.3d 882, 889 (9th Cir. 1999) (citing Anderson v. Harless, 459 U.S. 4, 7 . . . (1982), or the underlying claim would be decided under state law on the same considerations that would control resolution of the claim on federal grounds. Hiivala v. Wood, 195 F3d 1098, 1106-07 (9th Cir. 1999); Johnson v. Zenon, 88 F.3d 828, 830-31 (9th Cir. 1996); . . . .
>
> In Johnson, we explained that the petitioner must alert the state court to the fact that the relevant claim is a federal one without regard to how similar the state and federal standards for reviewing the claim may be or how obvious the violation of federal law is.

Lyons v. Crawford, 232 F.3d 666, 668-669 (9th Cir. 2000) (italics added).

In this case, Respondent contends that the claims are unexhausted because Petitioner failed to present them to the California Supreme Court.  A review of the petition for review and the petition for writ of habeas corpus filed in the California Supreme Court reveals that Petitioner did not present his two claims.  Since Petitioner has not presented his claims to the highest state court, the Court cannot grant relief. 28 U.S.C. § 2254(b)(1).  However, a petition may be denied on the merits notwithstanding a failure to exhaust state remedies.  28 U.S.C. § 2254(b)(2).  The Court will address the claims in this case, since they are plainly without merit.

III.  Standard of Review

Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Harrington v. Richter, __ U.S. __, __, 131 S.Ct 770, 784, 178 L.Ed.2d 624 (2011); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal

1  law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28
2  U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look
3  to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the
4  relevant state-court decision." Williams, 592 U.S. at 412. "In other words, 'clearly established Federal
5  law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at
6  the time the state court renders its decision." Id. In addition, the Supreme Court decision must
7  "'squarely address [] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a
8  new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is
9  no clearly established Federal law for purposes of review under AEDPA. Moses v. Payne, 555 F.3d
10 742, 754 (9th Cir.2009) (quoting Wright v. Van Patten, 552 U.S. 120, 125 (2008)); Panetti v.
11 Quarterman, 551 U.S. 930 (2007); Carey v. Musladin, 549 U.S. 70 (2006). If no clearly established
12 Federal law exists, the inquiry is at an end and the Court must defer to the state court's decision.
13 Carey, 549 U.S. 70; Wright, 552 U.S. at 126; Moses, 555 F.3d at 760.
14  If the Court determines there is governing clearly established Federal law, the Court must then
15 consider whether the state court's decision was "contrary to, or involved an unreasonable application
16 of," [the] clearly established Federal law." Lockyer, 538 U.S. at 72 (quoting 28 U.S.C. § 2254(d)(1)).
17 "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a
18 conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court
19 decides a case differently than [the] Court has on a set of materially indistinguishable facts."
20 Williams, 529 U.S. at 412-13; see also Lockyer, 538 U.S. at 72. "The word 'contrary' is commonly
21 understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'"
22 Williams, 529 U.S. at 405 (quoting Webster's Third New International Dictionary 495 (1976)). "A
23 state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the
24 state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Id. If
25 the state court decision is "contrary to" clearly established Supreme Court precedent, the state decision
26 is reviewed under the pre-AEDPA de novo standard. Frantz v. Hazey, 533 F.3d 724, 735 (9th
27 Cir.2008) (en banc).
28  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the

state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; see also Lockyer, 538 U.S. at 75-76. The writ may issue only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Harrington, 131 S.Ct. at 784. In other words, so long as fairminded jurists could disagree on the correctness of the state courts decision, the decision cannot be considered unreasonable. Id. If the Court determines that the state court decision is objectively unreasonable, and the error is not structural, habeas relief is nonetheless unavailable unless the error had a substantial and injurious effect on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See LaJoie v. Thompson, 217 F.3d 663, 669 (9th Cir.2000); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires considerable deference to the state courts. "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits," and "evidence introduced in federal court has no bearing on 2254(d)(1) review." Cullen v. Pinholster, __ U.S. __, __, 131 S.Ct. 1388, 1398-99 (2011). "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(e)(1)). However, a state court factual finding is not entitled to deference if the relevant state court record is unavailable for the federal court to review. Townsend v. Sain, 372 U.S. 293, 319 (1963), *overruled by*, Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992).

1    IV.      Review of Claims

2    A.      Failure to Join Cases

3          Petitioner first claims his federal due process rights were violated when the prosecution failed to join the attempted dissuasion case with the shooting case. Petitioner relies on Kellett v. Superior Court, 63 Cal.2d 822 (1966), in support of his claim.

         In Kellett, the defendant was standing on a public sidewalk with a pistol in his hand. Id. at 824. He was charged first with exhibiting a firearm in a threatening manner. Id. Later, he was charged in a separate case for possession of a concealed weapon by a person convicted of a felony. Id. He pleaded guilty to the initial charge and moved to dismiss the second case. Id. The California Supreme Court held that when the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Id. at 827.

         Respondent correctly argues that the Kellett rule concerns the interpretation and application of state law, and it is well established that alleged state law errors are not cognizable on federal habeas. Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)); see, e.g., Pineda v. Harrington, 2010 WL 3154095, at *7 (E.D. Cal. 2010); Devaughn v. Baca, 2012 WL 4513503, at 5 (C.D. Cal. 2012); Armijo v. Eson, 2010 WL 5634367, at *3 (C.D Cal. 2010). Petitioner's claim that the prosecution failed to apply Kellett and join the cases does not present a federal question and must be denied.

         In his traverse, Petitioner attempts to make out a federal claim by calling the Court's attention to the fact that Kellett invoked the principles of the Due Process Clause of the Fourteenth Amendment when it stated that the Supreme Court warned that prosecution of closely related individual offenses may constitute an impermissible denial of fundamental fairness. Kellett, 63 Cal.2d at 827. However, there is no clearly established Supreme Court precedent requiring the single prosecution of related cases. In the cases relied on by Kellett, specifically Ciucci v. Illinois, 356 U.S. 571, 575 (1958), and Hoag v. New Jersey, 356 U.S 464, 467 (1958), the Supreme Court did not find a violation of due process by the prosecution of individual offenses arising out of the same occurrence singly at separate

1   trials. In fact, the Supreme Court has stated that it has "steadfastly refused to adopt the 'single

2   transaction' view of the Double Jeopardy Clause." Garrett v. United States, 471 U.S. 773, 790 (1985).

3   In Hoag, the Supreme Court noted that it may "very well be preferable practice for a State . . . to try

4   the several offenses in a single prosecution"; however, "it would be an entirely different matter for us

5   to hold that the Fourteenth Amendment always prevents a State from allowing different offenses

6   arising out of the same act or transaction to be prosecuted separately." 356 U.S. at 467-68. The

7   Supreme Court refrained from establishing a single-transaction rule, "recogniz[ing] as the very

8   essence of our federalism that the States should have the widest latitude in the administration of their

9   own systems of criminal justice." Id. at 468. Moreover, the two offenses here do not even implicate

10  such concerns of fundamental fairness since they did not arise out of the same transaction or

11  occurrence. The shooting and the dissuasion of a witness took place on different occasions and

12  involved completely different facts.

13          Accordingly, Petitioner cannot show that the prosecution's failure to join the cases was

14  contrary to, or an unreasonable application of, federal law. The claim must be rejected.

15  B.      Ineffective Assistance of Counsel

16          Petitioner next claims counsel was ineffective in failing to raise the Kellett rule so that the

17  dissuasion case would be joined with the shooting case, or that the dissuasion case would be barred.

18          The law governing ineffective assistance of counsel claims is clearly established. Canales v.

19  Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.) In a petition for writ of habeas corpus alleging ineffective

20  assistance of counsel, the court must consider two factors. Harrington, 131 S.Ct. at 787; Strickland v.

21  Washington, 466 U.S. 668, 687 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the

22  petitioner must show that counsel's performance was deficient, requiring a showing that counsel made

23  errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth

24  Amendment. Strickland, 466 U.S. at 687. The petitioner must show that "counsel's representation fell

25  below an objective standard of reasonableness," and must identify counsel's alleged acts or omissions

26  that were not the result of reasonable professional judgment considering the circumstances.

27  Harrington, 131 S.Ct. at 787 (citing Strickland, 466 U.S. at 688); United States v. Quintero-Barraza,

28  78 F.3d 1344, 1348 (9th Cir. 1995). Petitioner must show that counsel's errors were so egregious as to

1  deprive defendant of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688. Judicial
2  scrutiny of counsel's performance is highly deferential. A court indulges a "'strong presumption' that
3  counsel's representation was within the 'wide range' of reasonable professional assistance."
4  Harrington, 131 S.Ct. at 787 (quoting Strickland, 466 U.S. at 687); Sanders v. Ratelle, 21 F.3d 1446,
5  1456 (9th Cir.1994).

6  Second, the petitioner must demonstrate prejudice, that is, he must show that "there is a
7  reasonable probability that, but for counsel's unprofessional errors, the result ... would have been
8  different," Strickland, 466 U.S. at 694. "It is not enough 'to show that the errors had some
9  conceivable effect on the outcome of the proceeding.'" Harrington, 131 S.Ct. at 787 (quoting
10 Strickland, 466 U.S. at 693). "Counsel's errors must be 'so serious as to deprive the defendant of a
11 fair trial, a trial whose result is reliable.'" Harrington, 131 S.Ct. at 787-788 (quoting Strickland, 466
12 U.S. at 687). A court need not determine whether counsel's performance was deficient before
13 examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland,
14 466 U.S. at 697. Since the defendant must affirmatively prove prejudice, any deficiency that does not
15 result in prejudice must necessarily fail.

16 Establishing that a state court's application of Strickland was unreasonable under 28 U.S.C. §
17 2254(d) is very difficult. Harrington, 131 S.Ct. at 788. Since the standards created by Strickland and §
18 2254(d) are both 'highly deferential,' when the two are applied in tandem, review is 'doubly' so.
19 Harrington, 131 S.Ct. at 788 (quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)).

20 In this case, Petitioner fails to demonstrate that counsel's failure to raise the Kellett issue was
21 objectively unreasonable, or that he suffered prejudice. In California, there are two tests to determine
22 the course of conduct for purposes of multiple prosecution. People v. Valli, 187 Cal.App.4th 786
23 (2010). Under one test, the Kellett rule does not apply if the offenses are committed at separate times
24 and locations. See People v. Douglas, 246 Cal.App.2d 594 (1966); People v. Ward, 30 Cal.App.3d
25 130 (1973); People v. Cuevas, 51 Cal.App.4th 620 (1966). The other test was set forth in People v.
26 Hurtado, 67 Cal.App.3d 633, 636 (1977): "[I]f the evidence needed to prove one offense necessarily
27 supplies proof of the other, . . . the two offenses must be prosecuted together, in the interests of
28 preventing needless harassment and waste of public funds." See also People v. Flint, 51 Cal.App.3d

1   333 (1975).  The evidentiary test set forth in Hurtado and Flint requires more than just a trivial overlap
2   of evidence.  Valli, 187 Cal.App.4th at 799.

3         Here, under either test, joinder was not warranted under Kellett.  Applying the first test, the
4   shooting and the dissuasion clearly took place at different times and locations.  Under the second test,
5   the shooting case required a completely "different evidentiary picture" than the dissuasion case.  Valli,
6   187 Cal.App.4th at 799.  Evidence needed to prove the shooting would not have supplied proof
7   concerning Petitioner's phone conversation from jail, or vice versa.  Therefore, Petitioner fails to show
8   counsel rendered ineffective assistance because counsel cannot be faulted for failing to make a
9   groundless motion.  James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994).  Nor did Petitioner suffer any
10  prejudice since the motion would have been denied.  Under the "doubly [deferential]" standards of
11  Strickland and § 2254, Petitioner fails to prove that the state court rejection of his claim was
12  unreasonable.  Harrington, 131 S.Ct. at 788 (quoting Knowles, 556 U.S. at 123).

13  V.     Certificate of Appealability

14        A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district
15  court's denial of his petition, and an appeal is only allowed in certain circumstances.  Miller-El v.
16  Cockrell, 537 U.S. 322, 335-36 (2003).  The controlling statute in determining whether to issue a
17  certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)   (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
>     (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
>     (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which

specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

**ORDER**

Accordingly, IT IS HEREBY ORDERED:

1) The petition for writ of habeas corpus is DENIED with prejudice;

2) The Clerk of Court is DIRECTED to enter judgment and terminate the case; and

3) The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated: **September 15, 2013**        /s/ Gary S. Austin
                                     UNITED STATES MAGISTRATE JUDGE